## No. 25-983

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

MAXIMILIAN KLEIN, SARAH GRABERT, RACHEL BANKS KUPCHO,
on behalf of themselves and all others similarly situated,
*Plaintiffs-Petitioners*,

v.

META PLATFORMS, INC.,
*Defendant-Respondent.*

_____

*From an Order Denying Class Certification Entered By the
United States District Court for the Northern District of California
The Honorable James Donato, District Judge • Case No. 3:20-cv-08570-JD*

# REPLY IN SUPPORT OF PETITION FOR PERMISSION TO APPEAL ORDER DENYING CLASS CERTIFICATION

SHANA E. SCARLETT
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
(510) 725-3000

SANFORD I. WEISBURST
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
295 Fifth Avenue
New York, NY 10016
(212) 849-7000

KEVIN Y. TERUYA
ADAM B. WOLFSON
CLAIRE D. HAUSMAN
BRANTLEY I. PEPPERMAN
**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
865 S. Figueroa Street, 10th Floor
Los Angeles, CA 90017
(213) 443-3000

*Counsel for Plaintiffs-Petitioners*


COUNSEL PRESS · (213) 680-2300

PRINTED ON RECYCLED PAPER


# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ...........................................................................................1

ARGUMENT ..................................................................................................3

      I.     FACEBOOK FAILS TO REFUTE THAT THE DISTRICT COURT MANIFESTLY ERRED IN RENDERING A MERITS DECISION, AND IMPROPERLY APPLYING *DAUBERT* AND RULE 702, AT THE CLASS-CERTIFICATION STAGE ........3

      II.    EVEN IF A FULL *DAUBERT*/RULE 702 ANALYSIS DISPOSITIVE OF CLASS CERTIFICATION WERE APPROPRIATE, FACEBOOK FAILS TO REFUTE THAT THE DISTRICT COURT MANIFESTLY ERRED IN THAT ANALYSIS .................................................................................6

      III.   FACEBOOK'S RESPONSES TO PLAINTIFFS' "DEATH-KNELL" ARGUMENT LACK MERIT .............................................11

CONCLUSION ..............................................................................................11

CERTIFICATE OF COMPLIANCE..................................................................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Amgen Inc. v. Connecticut Retirement. Plans & Trust Funds*,
  568 U.S. 455 (2013)..................................................................................4

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993)..................................................................................9

*Elosu v. Middlefork Ranch Inc.*,
  26 F.4th 1017 (9th Cir. 2022) ............................................................2, 7, 8

*Grodzitsky v. America Honda Motor Co., Inc.*,
  957 F.3d 979 (9th Cir. 2020) ..............................................................6, 10

*Hangarter v. Provident Life & Acc. Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004) ....................................................................7

*Lytle v. Nutramax Laboratories, Inc.*,
  114 F.4th 1011 (9th Cir. 2024) ..........................................................2, 4, 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) .....................................................................1

*Salhotra v. Simpson Strong-Tie Co., Inc.*,
  Case No. 22-15800 (9th Cir.).....................................................................6

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) .................................................................2, 5

*Stockwell v. City & County of San Francisco*,
  749 F.3d 1107 (9th Cir. 2014) ..............................................................4, 6

*Teradata Corp. v. SAP SE*,
  124 F.4th 555(9th Cir. 2024) ................................................................7, 8

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)...............................................................................1, 3

*Wendell v. GlaxoSmithKline LLC*,
  858 F.3d 1227 (9th Cir. 2017) ...........................................................2, 7, 8

ii

## **<u>Rules</u>**

Federal Rule of Evidence 702.......................................................................1, 2, 3, 4

## INTRODUCTION

Judge Koh held that Plaintiffs plausibly alleged antitrust injury. Judge Donato's denial of class certification in effect overturned Judge Koh's ruling and manifestly erred in doing so.

Facebook's Opposition ("Opp.") does not address *Tyson Foods, Inc. v. Bouaphakeo* (cited at Plaintiffs' Petition ("Pet.") 11, 12, 14), which held that whether there is "a fatal similarity" across class members' claims is a question district courts should address "as a matter of summary judgment, not class certification." 577 U.S. 442, 457 (2016) (cleaned up). That is the case here. Plaintiffs' theory is the same for the whole Class as for any Class member: Had Facebook not misrepresented its data and privacy practices, Facebook would have paid Class members $3.50, $5.00, or $6.25, or improved its service, to compensate them for Facebook's collection and use of their data. Each Class member likewise relies on the same evidence, including Professor Economides' expert analysis, economic literature, and documents and testimony (including from Facebook itself).

Facebook erroneously contends (Opp. 2–3, 9–13) that, if the common evidence includes an expert opinion, then, under *Daubert* and Federal Rule of Evidence 702, a district court can weigh the evidence and deny class certification. While Facebook relies (Opp. 3, 10–11) on *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 n.7 (9th Cir. 2022), for the proposition

that "[i]n a class proceeding, defendants may challenge the reliability of an expert's evidence under *Daubert*," this Court in *Lytle v. Nutramax Laboratories, Inc.*, described *Olean*'s statement as "dicta." *Lytle* held that, "while a district court should evaluate admissibility under the standard set forth in *Daubert*, whether testimony is admissible under that standard is 'not … dispositive,' but instead 'should go to the weight that evidence is given at the class certification stage.'" 114 F.4th 1011, 1030 (9th Cir. 2024), *cert. denied*, 2025 WL 663695 (Mar. 3, 2025) (quoting *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018)). The district court below erred in concluding that its *Daubert*/Rule 702 ruling compelled denial of class certification.

In any event, the district court's *Daubert*/Rule 702 ruling was manifestly erroneous because it applied an incorrect standard: whether the expert opinion is "convincing." 1-ER-10. The correct standard is that "Rule 702 should be applied with a 'liberal thrust' favoring admission," "shaky" evidence should be attacked through cross-examination (not exclusion), and "difficult issues" must be left to "the jury" to decide. *Wendell v. GlaxoSmithKline LLC*, 858 F.3d 1227, 1232–38 (9th Cir. 2017); *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1019–20, 1025–26 (9th Cir. 2022) (similar). Applying the wrong standard is a legal error, not a "factbound" determination. *Cf.* Opp. 1.

2

Here, Professor Economides' opinion was admissible under the correct standard. Even the district court acknowledged that the opinion had a basis in economic literature and that Facebook discussed paying users money for their data. In weighing the evidence and finding Professor Economides' opinion "not convincing," 1-ER-10, the court usurped the jury's role and manifestly erred.[1]

## ARGUMENT

### I. FACEBOOK FAILS TO REFUTE THAT THE DISTRICT COURT MANIFESTLY ERRED IN RENDERING A MERITS DECISION, AND IMPROPERLY APPLYING *DAUBERT* AND RULE 702, AT THE CLASS-CERTIFICATION STAGE

Plaintiffs explained (Pet. 11–14) that the district court manifestly erred by rendering a merits ruling at the class-certification rather than summary-judgment stage. Under *Tyson Foods*, whether the class exhibits "a fatal similarity—an alleged failure of proof as to an element of the plaintiffs' cause of action"—is a question district courts should address "as a matter of summary judgment, not class certification." 577 U.S. at 457 (cleaned up). Plaintiffs disagree with the district court's exclusion of Professor Economides' opinion and finding that Plaintiffs

---

[1] Plaintiffs filed petitions on February 7 and 14, 2025, which this Court docketed, respectively, as Nos. 25-853 and 25-983. Plaintiffs filed the second petition because the district court issued its original Order on January 24, and then issued an Amended Order on February 13. Facebook incorrectly argues (Opp. 1 n.1, in No. 25-983) that Plaintiffs' second petition (regarding the Amended Order) is untimely. Plaintiffs filed it the day after the Amended Order. Regardless, Facebook does not contest Plaintiffs' petition concerning the original Order is timely.

cannot establish antitrust injury, but the point for class-certification purposes is that this (alleged) failure is common to every Class member. The "possibility that a plaintiff will be unable to prove his allegations" is not "a basis for declining to certify a class[.]" *Lytle*, 114 F.4th at 1025 (citing *Tyson Foods*) (cleaned up); *cf.* Dkt. 848 at 12–13, 18–19 (district court stating, during hearing, "I'm not buying" Plaintiffs' theory of antitrust injury because "it is completely inconsistent with my experience," "it's proof time," and "your proof is lacking.").

Facebook fails to address *Tyson Foods*. Instead, it attempts to distinguish two other decisions—*Amgen Inc. v. Connecticut Retirement. Plans & Trust Funds*, 568 U.S. 455 (2013), and *Stockwell v. City & County of San Francisco*, 749 F.3d 1107 (9th Cir. 2014)—as "not involv[ing] *Daubert* and Rule 702" (Opp. 12–13).

But Facebook misconceives the role of *Daubert* and Rule 702 at the class-certification stage. *Lytle* held that (1) the possibility an expert's model "might show no injury at all" is a "fatal similarity" and "thus does not undermine predominance, because that result would nonetheless be common to the class," 114 F.4th at 1026 (citing *Tyson Foods*, *Amgen*, and *Stockwell*); (2) a "limited" *Daubert*/Rule 702 analysis may be appropriate at the class-certification stage, *Lytle*, 114 F.4th at 1031; and (3) in any event, "whether testimony is admissible under [the *Daubert*/Rule 702] standard is 'not ... dispositive' [regarding class certification], but instead 'should go to the weight that evidence is given at the class certification stage,'" *id.* at 1030

4

(quoting *Sali*, 909 F.3d at 1006).

The district court below followed none of these principles. Instead, it purported to conduct a full *Daubert*/Rule 702 analysis, found that analysis warranted excluding Professor Economides' opinion, and concluded that this required denying class certification. 1-ER-7–16.[2]

Facebook's authorities are not to the contrary. Relying on *Olean*, Facebook asserts that defendants can raise a *Daubert* challenge at class certification, plaintiffs may only use "*admissible* evidence" to support certification, and "expert testimony that is unreliable cannot support certification[.]" Opp. 10–11 (emphasis in original). But *Lytle* characterized *Olean* as dicta on this point and held, as noted above, that a limited application of *Daubert*/Rule 702 at the class-certification stage may be appropriate and, in any event, is not dispositive of certification. *Lytle*, 114 F.4th at 1024–34. Moreover, *Lytle* confirms that, to the extent Rule 702's "sufficient facts or data" requirement applies at class certification, the question is whether "the data suffices to show that a common question predominates over individual issues[.]" 114 F.4th at 1029–30. Professor Economides' opinions meet that test, showing that whether Class members were injured by not uniformly receiving more value for their

---

[2] Here, fact and merits experts discovery closed before the district court's Order. But the court did not have Professor Economides' merits expert reports on the motion for class certification, and even as to Professor Economides' opening and reply class-certification reports, the court considered only abridged versions. Dkt. 789; 1-ER-110–11; 1-ER-3.

data is a common question, including because, as it indisputably does in the real world, Facebook would have offered common, better terms to all users, rather than negotiate individual terms with each user.  2-ER-148–49, 2-ER-166, 2-ER-173–77.

*Grodzitsky v. America Honda Motor Co., Inc.*, 957 F.3d 979 (9th Cir. 2020) (cited at Opp. 11) is consistent with *Lytle*, and thus supports Plaintiffs not Facebook. *Grodzitsky* held that "a district court errs when it limits its analysis of whether there was commonality to a determination of whether Plaintiffs' evidence on that point was admissible."  957 F.3d at 986.  That is what the court erroneously did here.  1-ER-15–16 (excluding Professor Economides was "enough to deny certification").

Finally, that Plaintiffs' individual "claims are currently live below" (Opp. 10), is irrelevant.  In *Stockwell*, for example, this Court granted permission to appeal a class-certification denial—which necessarily meant the district court had ***not*** formally dismissed the named plaintiffs' claims—and then reversed the denial for improperly deciding "merits" issues.  749 F.3d 1107, 1109, 1113–14.

## II. EVEN IF A FULL *DAUBERT*/RULE 702 ANALYSIS DISPOSITIVE OF CLASS CERTIFICATION WERE APPROPRIATE, FACEBOOK FAILS TO REFUTE THAT THE DISTRICT COURT MANIFESTLY ERRED IN THAT ANALYSIS

Even if it were appropriate for the district court to conduct a full *Daubert*/Rule 702 analysis at the class-certification stage and find that analysis dispositive in denying certification, the court's analysis here was manifestly erroneous.  Pet. 14–21; *Salhotra v. Simpson Strong-Tie Co., Inc.*, Case No. 22-15800 (9th Cir.), Dkts. 1

6

& 48-1 (allowing appeal of district court's class-certification denial and vacating

denial because it rested on erroneous *Daubert* ruling). Specifically, the court applied

an incorrect legal standard, excluding Professor Economides' opinion because the

court found it "not convincing[.]" 1-ER-10. The court failed to apply the correct

standard, which asks whether the opinion and its underlying methodology are

sufficiently reliable but does not weigh the strength of the underlying evidence on

which the expert relied. *E.g.*, *Wendell*, 858 F.3d at 1232–38 (quoted *supra*, at 2);

*Elosu*, 26 F.4th at 1019–20, 1025–26 ("the district court is 'a gatekeeper, not a fact

finder,'" and thus may not "select between competing versions of the evidence," and

whether the expert's "hypothesis" is "corroborated by other evidence on the record

… is for the litigants to argue, and for the jury to decide"); *Hangarter v. Provident

Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 n.14 (9th Cir. 2004) ("The factual basis of

an expert opinion goes to the credibility of the testimony, not the admissibility[.]")

(cleaned up).

    1. Facebook asserts that "reliability, not plausibility, is the standard for expert

testimony." Opp. 3, 14–15. But that ignores that, in the circumstances here and in

*Teradata Corp. v. SAP SE*, 124 F.4th 555 (9th Cir. 2024) (cited at Pet. 4, 14–15),

where a district court identifies no flaw in the expert's methodology but rather

weighs the underlying evidence and finds the expert's opinion unconvincing,

reliability turns on plausibility. In *Teradata*, the district court excluded the expert's

7

opinions as "unreliable" because it considered the opinions "unwarranted" based on the record. 124 F.4th at 566, 571. This Court reversed, explaining that the expert's opinions relied on the defendant's own "business documents" and were thus "sufficiently plausible to constitute a competing version of the evidence." *Id.* at 571 (cleaned up). *Teradata* thus used plausibility to explain reliability. Here, the district court's Order contravened *Teradata* because it improperly weighed the import of Facebook's "business documents," which under *Teradata* are "sufficiently plausible" to allow the expert's opinion based on them to reach the jury.

2. To escape *Teradata*, Facebook attempts (Opp. 15) to reframe the Order as turning on a critique of Professor Economides' methodology rather than the court's belief regarding the persuasiveness of Professor Economides' opinion. But the Order speaks for itself: "The responses by Dr. Economides … to these shortfalls are not convincing." 1-ER-10. Similarly, the court earlier remarked, *e.g.*, "I'm not buying this ... because it is completely inconsistent with my experience." 1-ER-121–22. As noted above, such weighing of the evidence is for the jury, not the judge, and is not a sound basis to exclude the expert's opinion. *Wendell*, 858 F.3d at 1232–38; *Elosu*, 26 F.4th at 1019–20, 1025–26.

3. Facebook's interpretations (Opp. 16–19) of the evidence may be proper jury argument, but do not justify the district court's exclusion of Professor Economides' opinions. To take three examples:

8

a.  Facebook quotes Professor Economides' testimony about real-world users not being paid "to consume content" or "for their activity on the platform[.]"  Opp. 4–5, 18.  That is a red herring:  Professor Economides never opined that users would be compensated for their consumption of content or their mere activity on Facebook, but rather for ***Facebook's consumption of users' data***.  *E.g.*, 2-ER-168, 2-ER-180.

b.  While Facebook notes that the district court's description of some economic literature as "commentary" (Opp. 17), Facebook omits the court's acknowledgment that Professor Economides' sources are "credible" and his "propositions are not bunkum" as "general concepts in the economic literature[.]" 1-ER-7.  Although the court stated that "literature alone is not enough," 1-ER-9, it cited no authority; in fact, literature is unnecessary for expert reliability, *see Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 594 (1993) ("lack" of literature "not dispositive"), and, regardless, Professor Economides additionally relied on documents and testimony from Facebook and non-parties.

c.  Regarding Facebook's internal discussions about paying Class members for their data, 2-ER-170–74, contrary to Facebook's argument (Opp. 18–19), Professor Economides credibly explained—corroborated by Facebook's documents—that Facebook did not move forward with the proposals in the actual

9

world because it did not want to pay for data that its monopoly enabled it to take for free. 2-ER-172–73.[3]

4. Facebook also mischaracterizes certain evidence. It asserts (Opp. 4–5, 19–20) Plaintiffs' antitrust-injury theory was limited to a $5 payment, when Professor Economides actually proffered as alternatives $3.25, $6.50, 1-ER-184; Dkt. 793 at 13, *or* an improvement in service, 2-ER-138–42, 2-ER-176–77. Facebook does not argue that Professor Economides disclaimed $3.25 or $6.50. While Facebook asserts Professor Economides "disclaimed any opinion in quality [improvement rather than monetary payment]" (Opp. 20), Facebook omits that Professor Economides described money as "the crucial feature"—meaning the most likely—which does not rule out the alternative, if less likely, possibility of service improvement. Further Excerpts of Record ("FER")-2–3.

5. That this Court affirmed exclusion of an expert in *Grodzitsky*, 957 F.3d 979, does not mean that outcome is warranted here. That expert's opinion was woefully deficient relative to Professor Economides': he asserted that regulators in class members' vehicles were defective, but relied upon no industry standards, no

---

[3] Plaintiffs explained (Pet. 19 n.6) that, in faulting actual-world evidence showing that Facebook considered (but did not implement) proposals to pay Class members, the Order misapplied antitrust law because, even though Plaintiffs made such a showing, there is no requirement to show the defendant in the actual world contemplated an action that the plaintiff asserts would have been taken in the but-for world. Facebook does not respond.

peer-reviewed literature or consumer studies, and no information on regulator replacement rates. *Id.* at 981–83. His opinion was thus unreliable, and without it, the plaintiff only "ha[d] a series of window regulators that may or may not have broken before they were supposed to, and these breakages may or may not been caused by a common defect which may or may not exist." *Id.* at 984. Professor Economides, by contrast, relied on economic literature and Facebook/non-party evidence—which also stand on their own to support Plaintiffs' theory.

## III. FACEBOOK'S RESPONSES TO PLAINTIFFS' "DEATH-KNELL" ARGUMENT LACK MERIT

Although this Court need not reach the death-knell prong if it permits appeal under the manifest-error prong, the death-knell prong too supports allowing appeal.

Facebook's principal response is that Plaintiffs' arguments that the Order is incorrect are not "independent" of the merits. Opp. 21–22. But most of Plaintiffs' arguments concern the proper ***procedure*** at the class-certification stage, including whether a limited *Daubert*/Rule 702 test applies and whether, if that test points toward exclusion of the expert, that dispositively requires denying class certification. Those are independent of the merits question of whether reasonable jurors could find antitrust injury.

## CONCLUSION

Permission to appeal should be granted.

11

Dated:  March 3, 2025                    Respectfully submitted,

By: */s/ Shana E. Scarlett*               By: */s/ Sanford I. Weisburst*
SHANA E. SCARLETT                         SANFORD I. WEISBURST
 shanas@hbsslaw.com                        sandyweisburst@quinnemanuel.com
HAGENS BERMAN SOBOL SHAPIRO               QUINN EMANUEL URQUHART &
LLP                                       SULLIVAN, LLP
715 Hearst Avenue, Suite 202              295 Fifth Avenue
Berkeley, CA 94710                        New York, NY 10016
(510) 725-3000                            (212) 849-7000

                                          QUINN EMANUEL URQUHART &
                                          SULLIVAN, LLP
                                          KEVIN Y. TERUYA
                                           kevinteruya@quinnemanuel.com
                                          ADAM B. WOLFSON
                                           adamwolfson@quinnemanuel.com
                                          CLAIRE D. HAUSMAN
                                           clairehausman@quinnemanuel.com
                                          BRANTLEY I. PEPPERMAN
                                           brantleypepperman@quinnemanuel.com
                                          865 S. Figueroa Street, 10th Floor
                                          Los Angeles, CA 90017-2543
                                          (213) 443-3000

12

## <u>CERTIFICATE OF COMPLIANCE</u>

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportional typeface using Microsoft Word in 14-point Times New Roman font.  The brief contains 2,593 words.

By: */s/ Sanford I. Weisburst*
Sanford I. Weisburst